UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CHRISTOPHER LEATHERS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:18-CV-345-JD-MGG |
| | ) |
| SGT. NEIL JOHNSON, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

This matter is before the Court on Defendant Sergeant Neil Johnson's Motion for Summary Judgment [DE 41]. In relevant part, Plaintiff Christopher Leathers alleges cruel and unusual punishment arising from the Defendant's repeated requests for oral sex. The Defendant argues that verbal harassment, standing alone, does not constitute cruel and unusual punishment. In the alternative, the Defendant argues he is entitled to qualified immunity. The Court rejects the Defendant's arguments.

**I. FACTUAL BACKGROUND**

Plaintiff Christopher Leathers was an inmate in the Indiana Department of Corrections. *See* DE 43-1, p. 3.[1] While incarcerated, the Plaintiff worked as a shoe shiner. *Id.* at 12-13. The Defendant worked as a prison guard. *Id.* at 13.

On May 24, 2016, the Defendant requested that the Plaintiff shine his shoes. *Id.* at 15-16. During the shoe shining, the Defendant requested oral sex. *Id.* at 16. The Plaintiff declined the request. *Id.* The Defendant once again asked for a sexual favor, but the Plaintiff again declined. *Id.* During his deposition, the Plaintiff described the incident as follows:

---

[1] Throughout this Opinion and Order, the Court will cite to the CM/ECF electronic page header rather than the page number listed on the actual document.

> Q. Tell me what happened when Sergeant Johnson arrived.
>
> A. Mr. Johnson came in to get his shoes shined. And while he was there, he approached me about—we were talking. And we were talking about other guards and stuff and how they were bringing in contraband. And—and while we were discussing stuff, he said—he asked me if I smoked tobacco. And I said yes, when I was—when I was free.
>
> And then he went on to prop—propose to me. He said if I did him a sexual favor, then he would bring me in tobacco. I said 'No, I'm not gay.' And this all took place while I was shining his boots. And, yeah, and then he asked me a second time if I'd give him oral sex. And I declined. And then he said I'd regret it and that no one would believe me if I brought it—brought it out into the light because he's a guard and I'm an inmate.

*Id.* at 16.

The Plaintiff stated that the Defendant "gestured with his hand on his crotch." *Id.* at 18. He further stated that the Defendant "kept grabbing himself" during the shoe shining. *Id.* at 17. The Plaintiff testified that he "was really thrown off and intimidated. I wasn't suspecting him to proposition me like that. All right? And it really made me uncomfortable and in a weird situation." *Id.*

On May 25, 2016, the Defendant cited the Plaintiff for conspiracy and trafficking. *See* DE 43-2. Thereafter, the Plaintiff was fired from his job as a shoe shiner. DE 43-1, p. 14. The Plaintiff testified that the Defendant retaliated against him based upon his refusal to perform oral sex. *Id.* at 23. He further testified that the Defendant's actions were sexual abuse and that he was "mentally scarred by this whole issue. I've had many sleepless nights because of it and running over in my head what had transpired. I lost my job. I lost financial means to take care of myself in here because of that. I had to see mental health [services]." *Id.* at 24. The Plaintiff also testified that he has been verbally and sexually harassed by his fellow inmates as a result of this incident. *Id.* at 5.

2

## II.  STANDARD OF REVIEW

A court must grant summary judgment if the movant shows that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one identified by the substantive law as affecting the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" exists with respect to any material fact when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. Where a factual record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial, and summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether a genuine issue of material fact exists, courts must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in that favor. *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008); *King v. Preferred Tech. Grp.*, 166 F.3d 887, 890 (7th Cir. 1999). However, the non-moving party cannot simply rest on its pleadings but must present evidence sufficient to show the existence of each element of its case on which it will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000).

## III.  DISCUSSION

The Defendant argues that verbal harassment, standing alone, does not constitute cruel and unusual punishment. In the alternative, the Defendant argues he is entitled to qualified immunity. The Court addresses these issues in turn.

**A.    Cruel and Unusual Punishment**

The Defendant argues that, as a matter of law, verbal harassment does not constitute cruel and unusual punishment. In support of this argument, the Defendant relies upon *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000) and *Dobbey v. Illinois Department of Corrections*, 574 F.3d

443 (7th Cir. 2009). However, as seen below, the Court concludes that *DeWalt* and *Dobbey* have been distinguished by *Beal v. Foster*, 803 F.3d 356 (7th Cir. 2015) and *Lisle v. Welborn*, 933 F.3d 705 (7th Cir. 2019). Therefore, the Court concludes that verbal harassment may constitute cruel and unusual punishment.

"The Eighth Amendment prohibits cruel and unusual punishments that involve the unnecessary and wanton infliction of pain." *Welborn*, 933 F.3d at 716 (citing *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)). "The prohibition also includes acts 'totally without penological justification.'" *Id.* (quoting *Hope v. Pelzer*, 536 U.S. 730, 737 (2002)); *see also Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003).

In *DeWalt v. Carter*, 224 F.3d 607, 610 (7th Cir. 2000), a prison guard and a prison administrator made sexually suggestive and racially derogatory comments to a prisoner. Namely, the guard and the administrator berated the prisoner for his alleged affection for a female employee. *See id.* at 610-11. The prisoner sued, alleging that the employees' actions violated the Eighth Amendment and Fourteenth Amendment. *Id.* at 611. The district court concluded that such language did not violate the Constitution and dismissed the claim. *Id.* at 611-12. The Seventh Circuit agreed and reasoned as follows:

> Precedent from this circuit as well as others supports the district court's conclusion. The use of racially derogatory language, while unprofessional and deplorable, does not violate the Constitution. *Standing alone, simple verbal harassment does not constitute cruel and unusual punishment*, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws. Accordingly, Mr. DeWalt's claims that Officer Young and Mr. Murray violated his Eighth and Fourteenth Amendment rights by directing racially derogatory and sexually explicit language at him were properly dismissed.

*Id.* at 612 (emphasis added; citations omitted).

Similarly, in *Dobbey v. Illinois Department of Corrections*, 574 F.3d 443, 444 (7th Cir. 2009), a black prisoner alleged that a white prison guard hung a noose from the ceiling. The

4

incident took place while the guards were playing cards in the main control room. *Id.* The prisoner alleged that the officer swatted at the noose and "crossed his arms looking crazy with evil eyes." *Id.* The prisoner claimed that he feared that the guard would "snap" and cause him physical injury. *Id.* at 445. The noose was removed within 20 minutes. *Id.* Thereafter, the prisoner claimed that the noose incident was cruel and unusual punishment. *Id.* The district court dismissed the claim, concluding that the prisoner failed to state a claim against the guards. *Id.* at 444. On appeal, the Seventh Circuit noted that "a threat, which is how the plaintiff interpreted the incident, can rise to the level of cruel and unusual punishment." *Id.* at 445. Despite recognizing "the ugly resonance of the noose," the court concluded that "getting up in the middle of a card game to hang a noose in the sight of black prisoners, while the other players calmly continue the game, cannot reasonably be taken seriously as a threat, rather than as racial harassment." *Id.* The court then concluded that "[t]he line between 'mere' harassment and 'cruel and unusual punishment' is fuzzy, but we think the incident with the noose and the 'evil eyes' falls on the harassment side of the line because it was not a credible threat to kill, or to inflict any other physical injury." *Id.* at 446. Further, the court reasoned that "harassment, while regrettable, is not what comes to mind when one thinks of 'cruel and unusual' punishment." *Id.* Based upon this, the court affirmed the dismissal of the prisoner's cruel and unusual punishment claim. *Id.* at 447.

However, in *Beal v. Foster*, 803 F.3d 356, 358 (7th Cir. 2015), a prison guard "made verbal sexual comments" towards a prisoner. The guard told the prisoner "to place his penis inside" another prisoner. *Id.* The guard would also urinate while in the presence of the prisoner. *Id.* The prisoner claimed that other inmates began harassing him as a result of the guard's actions. *Id.* The prisoner also claimed that he suffered severe psychological harm. *Id.* at 358-59.

5

The prisoner sued, alleging that the guard had inflicted cruel and unusual punishment. *Id.* at 357. The district court dismissed the claim after concluding that "standing alone, verbal harassment of an inmate does not constitute a constitutional violation." *Id.* On appeal, the Seventh Circuit concluded that "[t]he proposition that verbal harassment cannot amount to cruel and unusual punishment is incorrect." *Id.* The court emphasized that drawing "a categorical distinction between verbal and physical harassment is arbitrary. In short, the alleged pain sufficient to constitute cruel punishment may be physical or psychological." *Id.* at 357-58 (internal quotation marks and alterations omitted). Turning to the facts of the case, the Seventh Circuit noted that the prisoner claimed severe psychological harm as a result of the guard's actions. *Id.* at 358-59. Further, the court reasoned that "the plaintiff feared that [the officer's] comments labeled him a homosexual and by doing so increased the likelihood of sexual assaults on him by other inmates." *Id.* at 358. Finally, based upon the guard's public urination, the court found that the prisoner had alleged nonverbal harassment. *Id.* at 359. Thus, the appellate court reversed and remanded for further proceedings. *Id.*

Likewise, in *Lisle v. Welborn*, 933 F.3d 705, 711 (7th Cir. 2019), a prisoner attempted suicide on multiple occasions. The prisoner was placed on suicide watch and his vital signs were monitored by prison staff. *Id.* at 712. The prisoner alleged that a nurse repeatedly mocked him for his failed suicide attempts and encouraged him to "do a better job next time." *Id.* The prisoner sued, alleging that the nurse's comments were cruel and unusual punishment. *Id.* at 712-13. The nurse denied making the comments and moved for summary judgment. *Id.* The district court, relying upon *DeWalt*, concluded that the nurse's actions were "simple verbal harassment" and did not amount to cruel and unusual punishment. *Id.* at 713. On appeal, the Seventh Circuit reasoned as follows:

6

> The district court granted summary judgment, quoting our statement that, "Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws." *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000) (officer allegedly used racially and sexually derogatory language). Since *DeWalt*, however, we have said that its language was too broad, explaining: "The proposition that verbal harassment cannot amount to cruel and unusual punishment is incorrect." *Beal v. Foster*, 803 F.3d 356, 357 (7th Cir. 2015).

*Id.* at 717. Turning to the facts of the case, the Seventh Circuit concluded that the nurse's statements "went beyond 'simple verbal harassment.' She is alleged to have taunted and encouraged an inmate known to be suicidal and in the midst of a mental health crisis to take his own life." *Id.* at 718. The court reasoned that such comments, if true, may have caused "psychological pain." *Id.* Thus, the court reasoned that the nurse's comments "could be deemed cruel infliction of mental pain and deliberate indifference to his risk of suicide, making summary judgment improper." *Id.* at 717.

Relying upon *DeWalt* and *Dobbey*, the Defendant argues that "verbal harassment in prison, standing alone, does not constitute cruel and unusual punishment as a matter of law." DE 42, p. 5. However, as seen above, the rationale of *DeWalt* and *Dobbey* has been significantly undercut by *Beal* and *Welborn*. Specifically, the Seventh Circuit has recently concluded that "[t]he proposition that verbal harassment cannot amount to cruel and unusual punishment is incorrect." *Beal*, 803 F.3d at 357. Moreover, the Seventh Circuit reasoned that "a categorical distinction between verbal and physical harassment is arbitrary. In short, the alleged pain sufficient to constitute cruel punishment may be physical or psychological." *Id.* at 357-58 (internal quotation marks and alterations omitted); *see also Welborn*, 933 F.3d at 717 (recognizing that *DeWalt* was distinguished by *Beal*). Thus, verbal harassment may constitute cruel and unusual punishment.

7

Furthermore, the Defendant's actions, if true, went beyond "simple verbal harassment." *See Welborn*, 933 F.3d at 717. The Plaintiff, who was a prisoner working as a shoe shiner, testified that the Defendant, who was a prison guard, requested oral sex during a shoe shining. DE 43-1, p. 17. This request for oral sex was made by an individual in a position of power over a prisoner. The Plaintiff stated that the Defendant repeatedly touched "his private area" during the shoe shining. *Id.* The Plaintiff noted that he was "really thrown off and intimidated." *Id.* He testified that the Defendant retaliated against him based upon his refusal to perform oral sex. *Id.* at 23. He further testified that the Defendant's actions were sexual abuse and that he was "mentally scarred" and had to seek mental health services. *Id.* at 24. Further, the Plaintiff testified that he has been verbally and sexually harassed by his fellow inmates as a result of this incident. *Id.* at 5. Thus, this case is factually distinguishable from *DeWalt* and *Dobbey* and is more comparable to *Beal* and *Welborn*. Thus, whether the Plaintiff was subjected to cruel and unusual punishment is a disputed issue of material fact that must be decided at trial.

**B.     Qualified Immunity**

The Court also rejects the Defendant's invocation of qualified immunity. "Qualified immunity shields public officials from liability when they act in a manner that they reasonably believe to be lawful." *Gonzalez v. City of Elgin*, 578 F.3d 526, 540 (7th Cir. 2009) (citing *Anderson v. Creighton*, 483 U.S. 635, 638–39 (1987)). "Qualified immunity is 'an immunity from suit rather than a mere defense to liability.'" *Pearson v. Callahan*, 555 U.S. 223, 237 (2009) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). "The plaintiff carries the burden of defeating the qualified immunity defense." *Chasensky v. Walker*, 740 F.3d 1088, 1095 (7th Cir. 2014). "To overcome a defendant's invocation of qualified immunity, a plaintiff must show (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly

established at the time of the challenged conduct." *Green v. Newport*, 868 F.3d 629, 633 (7th Cir. 2017) (internal quotation marks omitted). A right is clearly established when "there is 'a clearly analogous case establishing a right to be free from the specific conduct at issue' or that 'the conduct is so egregious that no reasonable person could have believed that it would not violate clearly established rights.'" *Gonzalez*, 578 F.3d at 540 (quoting *Smith v. City of Chicago*, 242 F.3d 737, 742 (7th Cir. 2001)); *see also Chasensky*, 740 F.3d at 1094. "If *either* inquiry is answered in the negative, the defendant official is entitled to summary judgment." *Gibbs v. Lomas*, 755 F.3d 529, 537 (7th Cir. 2014) (emphasis in original).

When the facts are viewed in the light most favorable to the nonmoving party, the Defendant violated the Eighth Amendment's prohibition on cruel and unusual punishment. The Defendant pressured the Plaintiff to perform oral sex. DE 43-1, pp. 16-17. This request was made by an individual in a position of power over a prisoner. *Id.* The Defendant also touched his genitals from the exterior of his clothing while the Plaintiff shined his shoes. *Id.* at 17-18. The Defendant retaliated against the Plaintiff when he refused to perform oral sex. *Id.* at 23. As a result of the Defendant's actions, the Plaintiff was intimidated and suffered psychological distress. *Id.* at 18, 24. Further, the Plaintiff was also subjected to harassment by his fellow prisoners as a result of the Defendant's actions. *Id.* at 5. Thus, when viewed in the light most favorable to him, the Plaintiff was subjected to cruel and unusual punishment.

Furthermore, the Plaintiff's constitutional right to be free from this punishment was clearly established. "Inmates have long had a clearly established right to be free from intentionally inflicted psychological torment and humiliation unrelated to penological interests." *Leiser v. Kloth*, 933 F.3d 696, 703 (7th Cir. 2019) (citing *Hudson v. Palmer*, 468 U.S. 517, 530

(1984); *King v. McCarty*, 781 F.3d 889, 892 (7th Cir. 2015); *Beal*, 803 F.3d at 359; *Mays v. Springborn*, 575 F.3d 643, 649 (7th Cir. 2009)). Moreover, cases such as *Beal* are clearly analogous to the facts of this case. Regardless, no reasonable prison guard could have believed that pressuring an inmate to perform oral sex would be lawful. Accordingly, the Defendant's invocation of qualified immunity is denied.

## IV.  CONCLUSION

For the reasons stated above, the Defendant's Motion for Summary Judgment [DE 41] is DENIED.

SO ORDERED.

ENTERED:  August 19, 2020

                                              /s/ JON E. DEGUILIO
                                        Chief Judge
                                        United States District Court